PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THERESA MARIE BACON, ) | |
| ) | CASE NO. 1:11-cv-01805-BYP |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security, ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** |
| Defendants. | |

Before the Court is Plaintiff Theresa Marie Bacon's ("Bacon") objection to the report of Magistrate Judge Armstrong, recommending that the Court affirm Commissioner of the Social Security Administration's decision denying Bacon's application for Social Security Disability benefits. (ECF No. 20). Commissioner of the Social Security Administration ("the Commissioner") requests that the Court adopt the Report and Recommendation of the Magistrate Judge.

As explained below, the Court affirms the Commissioner's decision denying benefits to Bacon and adopts the Magistrate Judge's Report and Recommendation. Bacon's objections are overruled.

**I. Background**

Bacon filed an application for Social Security Disability benefits on February 23, 2007 alleging an onset of disability on December 31, 1999. ECF No. 16 at 1. Bacon, who worked various jobs, ranging from a hostess, general office work, to dispatching, alleged disability primarily due to migraines and fibromyalgia. ECF No. 16 at 3. Bacon's claim for benefits was

(1:11-cv-01805)

denied initially and upon reconsideration.  ECF No. 16 at 1.  Bacon requested and received a hearing before an Administrative Law Judge.  ECF No. 16 at 1.  The ALJ issued an unfavorable decision to Bacon, concluding that Bacon is capable of performing her past relevant work.  ECF No. 10 at 24.  The Appeals Council's notice that it would not review the case, made the ALJ's decision final.  ECF No. 19 at 1.

After the Commissioner's decision became final, Bacon filed an appeal with this Court alleging that the ALJ erred in the following ways:

1. Evaluating Bacon's case at [S]tep [T]hree of the sequential evaluation

2. Evaluating the opinion of Bacon's treating physician

3. Not considering the special accommodations Bacon received so that she could continue to work for as long as she did

The magistrate judge issued a report recommending that the Court affirm the Commissioner's decision denying Bacon's application for Social Security Disability benefits. Bacon objected on several bases and, overall, asserted that the magistrate judge erroneously affirmed the ALJ's findings.  (ECF No. 23).  For the reasons given herein, the Commissioner's decision is affirmed and the magistrate judge's Report and Recommendation is adopted to the extent it is not inconsistent with this opinion.

## II.  Legal Standard

### A.  Standard of Review

Typically, a district court is required to conduct a *de novo* review of the claimant's objections to a report and recommendation.  28 U.S.C. § 636(b)(1) (West 2009).  A final decision of the Social Security Commissioner made by an ALJ is, however, not reviewed *de novo*.

(1:11-cv-01805)

Rather, a district court is limited to examining the entire administrative record to determine whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. *Id.* In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor should a district court focus or base its decision on a single piece of evidence. Instead, a court must consider the record taken as a whole. *See Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). The district court may, however, look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have made a different decision than the ALJ made. *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). It is a "well-established rule, however, that an agency's action may not be upheld on grounds other than those relied on by the agency." *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 420 (1992). A reviewing court is, however, powerless to affirm an agency decision where the grounds communicated by the agency are inadequate or improper, or fail to articulate the grounds for the decision. *Burlington Truck Lines v. U.S.*, 371 U.S. 156, 169 (1962) (describing this tenet as a "simple but fundamental rule of administrative law"); *see also Berryhill v. Shalala*, Case No. 92-

(1:11-cv-01805)

5876, 1993 WL 361792 at *7 (6th Cir. Sep. 16, 1993) (applying this rule in the Social Security context).  Further, "even if supported by substantial evidence, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotation omitted).

### B. Standard for Establishing Disability

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A) (West 2004), 1382c(a)(3)(A) (West 2004).  The claimant's impairment must prevent her from doing her previous work, as well as any other work existing in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, Agency regulations provide a five-step sequential evaluation.  If a claimant can be found disabled at any step of the sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a)(4) (West 2012); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  During Step One, the ALJ determines whether the claimant is engaged in a "substantial gainful activity" at the time he seeks disability benefits.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 416.972(a) (West 2012).  Gainful work activity is work activity that is done for pay or profit, whether or not a

(1:11-cv-01805)

profit is realized.  20 C.F.R. § 416.972(b) (West 2012).  In Step Two, the claimant must show that he "suffers from a severe impairment in order to warrant a finding of disability." *Colvin,* 475 F.3d at 730 (internal quotation marks omitted).  An impairment is severe when it significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(c)  (West 2012.  In Step Three of the analysis, the ALJ determines whether the claimant has an impairment that satisfies the criteria of an impairment listed in Appendix 1 and that also meets the durational requirement.  *See* 20 C.F.R. § Part 404 Subpart P, Appendix 1 (West 2012).  A claimant is deemed disabled if she has an impairment that meets both the listing and the duration requirement.  Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits her to perform past relevant work, which is defined as substantial gainful activity performed within the past 15 years and lasted long enough for the claimant to learn to perform it.  20 C.F.R. § 416.960(b)(1) (West 2012).  The claimant bears the burden of proof at Steps One through Four.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At Step Five, however, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that fit the claimant's RFC and vocational profile.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

### III. Analysis

**A.  Whether the ALJ Erred at Step Three of the Sequential Evaluation**

In her first objection, Bacon argues that the magistrate judge erred in finding the ALJ's Step Three analysis adequate.  ECF No. 23 at 1.  Step Three of the sequential evaluation requires

(1:11-cv-01805)

a determination of "whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526."

The magistrate judge reasoned that, although the ALJ found physical and mental impairments at Step Two, these impairments were not represented in a Listing.  Moreover, the magistrate judge found that the ALJ had properly evaluated the impairments and found that the impairments did not meet or equal a Listing.  Thus, the correct legal standard was applied.  ECF 20 at 19.

Bacon objected contending that: (1) the ALJ failed to correctly assess her physical impairments and did not compare the physical impairments to a Listing, and (2) the magistrate judge found some evaluative language in the ALJ's decision and substituted that for the evaluation at Step Three and provided her own *post hoc* rationalization to support the ALJ's finding.  ECF No. 23 at 2.

> **1.  Bacon Contends That the ALJ Failed to Analyze Her Physical Impairments and Compare Them to a Listing**

Bacon argues that while the ALJ provided a lengthy analysis of why her mental impairments did not meet or equal a listed mental impairment, the ALJ did not elaborate upon her physical impairments.  ECF No. 23 at 2.  Citing to the record, Bacon contends that the ALJ, without sufficient explanation, stated:

> [t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526. (TR 13).

(1:11-cv-01805)

ECF 10 at 18

Chiefly, Bacon relies upon the Sixth Circuit's ruling in *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411 (6th Cir. 2011) to support her challenges to the ALJ's treatment of her physical impairments. In *Reynolds*, the Court ruled that "the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments. Put simply, [the ALJ] skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment[], but did not do so." *Id.* at 416. That error was reversible.[1] *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 416 (6th Cir. 2011). Bacon contends that the ALJ in the instant case erred in the same way as the ALJ *Reynolds*. Bacon is mistaken.

The Sixth Circuit has clearly ruled that the governing regulations "do[ ] not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue," and there is no heightened articulation standard at Step Three when the ALJ's findings are supported by substantial evidence." *Todd v. Astrue*, 2012 WL 2576435 (N.D. Ohio May 15, 2012). *(citing Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). The burden is on the claimant to present evidence establishing that she has a listing level impairment. *See Jones v. Comm'r of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). In order to permit a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision. ECF No. 20 at 19.

---

[1] As explained above, the determination regarding disability may be made at any one of the sequential steps. The *Reynolds* Court found that had the ALJ had properly analyzed Step Three and found Reynolds met Listing 1.04, she would have been eligible for benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five. *Id.*

(1:11-cv-01805)

Bacon also alleges that the ALJ failed to compare the impairments to a Listing. Although an ALJ is required to compare the claimant's medical evidence to the requirements of listed impairments in Step Three, "it is the claimant's burden to show that he meets or medically equals an impairment in the Listings." Todd v. Astrue, 2012 WL 2576435 (N.D. Ohio May 15, 2012). Here, Bacon never identified what Listing(s) she claims to meet[2]. Despite Bacon's failure to identify a Listing, the ALJ identified the relevant physical and mental impairments at Step Two: consisting of headaches (including migraine and chronic daily headaches believed to be partially analgesic rebound headaches), tension headaches and cluster headaches; in addition to mild degenerative disc and joint disease of the cervical spine; and myofascial pain syndrome/chronic pain syndrome/fibromyalgia. While the ALJ agreed that Bacon suffered severe headaches and had mild cervical spondylosis with central bulging disc at C4-5 and C5-6, she ultimately concluded that those impairments did not meet or equal a Listing. ECF No. 16 at 12; ECF No. 20 at 20. The ALJ explained, "[n]o treating or examining physician has indicated finding that would satisfy the severity requirements of any listed impairment." ECF 10 at 18. The ALJ further proceeded,

> In reaching the conclusion that the claimant did not have an impairment or combination of impairments that meet or medically

---

[2] In a separate issue, Bacon contends that the ALJ overlooked the possibility that her impairments equaled a listing, but this has been addressed in the same manner as whether the ALJ did not find that Bacon's impairments met a listing. Furthermore, courts are hesitant to allow this sort of argument, stating, "I am also concerned that an over-broad reading of *Bledsoe* and *Reynolds* would impose affirmative duties on an ALJ to analyze listings not suggested, much less pressed, by the claimant with the burden of proof." The court further states, "This creates the very real risk that the claimant, who has the burden of proof at step three, will be rewarded for deliberately choosing not to raise specific listing arguments at the hearing."

8

(1:11-cv-01805)

> equal a listing impairment, the undersigned also considered the opinion of the Bureau of Disability Determination medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion.

ECF 10 at 18.

When the ALJ's decision is considered as a whole, as must be, it is clear that the ALJ's conclusion at Step Three of sequential analysis was made in accordance with appropriate legal standards and supported by substantial evidence.  Therefore, the magistrate judge correctly upheld the ALJ's decision regarding the analysis of Bacon's physical impairments.

## 2. Whether the Magistrate Judge Provided *Post Hoc* Rationale to Support the ALJ Finding at Step Three

In arguing that the ALJ did not properly analyze Step Three, Bacon also contends that the magistrate judge erred by injecting (her own) *post hoc* rationale[3] to justify the ALJ's Step Three finding.  Bacon takes issue with the fact that this language was included in the ALJ's Step Three.  The language was found in the residual functional capacity analysis, which occurs between Steps Three and Four.  Bacon claims that the analysis had to be done at Step Three, and that the language was not a proper substitute for the required evaluation.

---

[3] Bacon challenges the magistrate judge's recitation of the ALJ's determination of Bacon's residual functional capacity.  The magistrate judge wrote, "Although Plaintiff's cervical spine showed mild cervical spondylosis with the central bunging disc at C4-5 and C5-6, the relevant medically determinable evidence showed specifically that Plaintiff's condition did not show evidence of cord or nerve root sleeve compression." ECF No. 20 at 20.  This, contrary to Bacon's position, is simply an amplification of the ALJ's articulation that "The October 17, 2001 MRI showed mild cervical spondylosis with central bulging discs at C4-5 and C5-6.  However, there was no evidence of cord or nerve root sleeve compression (Exhibit 34F)." ECF No. 10 at 21.  Interestingly, the ALJ's statement refers to the physical impairments that Bacon claims the ALJ neglected to analyze.

(1:11-cv-01805)

Bacon relies on dicta in *May*, which dismissed a defendant's *post hoc* rationale stating, "the ALJ was required to evaluate this evidence, compare it to [the appropriate section of] the Listings, and give and explanation, in order to facilitate meaningful judicial review," so that it could be determined whether the ALJ's decision was supported by substantial evidence. *May v. Comm'r of Soc. Sec.* 2011 WL 3490186 (N.D. Ohio, June 1, 2011). What Bacon appears to be arguing is that, like *May*, the magistrate judge's justification of the ALJ's reasoning should be dismissed because the evaluation did not come from the ALJ at Step Three and instead was inappropriately inserted (by the ALJ) in the later residual functional capacity analysis.

Bacon misapplies *May*. In *May*, the magistrate judge observed that "correction of such an error," based upon the medical record in that case, "is not merely a formalistic matter of procedure, for it [was] possible that the evidence May put forth could meet this listing." *Id* at 9. In *Newsome*, the court explained that, in *May*, there was sufficient evidence in the record for the ALJ to conclude that the plaintiff in *May* could meet or equal a listing. *Newsome v. Astrue*, 2012 WL 2872154 (N.D. Ohio July 12, 2012). Unlike *May*, Bacon has not provided sufficient evidence that her impairments met or equaled a Listing. Given that Bacon has failed to fulfill this key step, *May* is inapplicable in the current case.

Furthermore, Bacon's contention regarding the magistrate judge's alleged *post hoc* rationale is without merit. Assuming *arguendo* that the ALJ did not provide the analysis until after Step Three, during the determination of residual functioning capacity before Step Four, "if the ALJ's lack of discussion . . . at [S]tep [T]hree is error, it is harmless, as the ALJ's findings at Step Four provided sufficient consideration and the Court is confident that no reasonable

10

(1:11-cv-01805)

administrative factfinder would have resolved the matter differently." *Hufstetler v. Comm'r of Soc. Sec. Admin.,* 2011 WL 2461339 (N.D. Ohio June 17, 2011). Furthermore, "[i]n social security cases, ultimate judicial review of a decision by the Commissioner is limited to determining whether the decision is supported by substantial evidence based upon the record as a whole." *Malone v. Comm'r of Soc Sec.*, 2011 WL 5520292 (N.D. Ohio Nov. 10, 2011) *citing Longworth v. Comm'r of Soc Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). There was no reversible error relative to the Step Three evaluation.

### B. ALJ's Evaluation of the Medical Evidence on Record

Bacon contends that the ALJ's evaluation of the medical evidence was improper. ECF No. 23 at 1. Generally, the treating physician's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record. *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541 (6th Cir. 2004) *citing Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). If the opinion of a treating source is not given controlling weight, an ALJ must consider certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *Id.* Furthermore, the ALJ must "give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion. *Id.*

11

(1:11-cv-01805)

Bacon lodges a two-fold objection to the ALJ's determination that the opinion of Bacon's treating physician, Dr. Lerner, be given no weight.  First, Bacon argues that the ALJ's reasons were not good reasons because the ALJ made a medical judgment in determining what documentation is needed  to support the opinion given by the doctor.  Next, Bacon argues that the opinion should not have been rejected entirely.  Rather, the opinion should just not have been given controlling weight.

### 1. Whether the ALJ provided Good Reason for Rejecting the Treating Physician's Opinion.

After finding that "Dr. Lerner's opinion of the claimant's exertional capacity is consistent with the evidence of record that shows that the claimant can perform sedentary work", the ALJ stated the following in explanation of her decision to give no weight to the treating physician's opinion:

> However, the progress notes of Dr. Lerner and other medical records prior to the date last insured fail to document objective evidence showing that the claimant is unable to tolerate any level of stress or would necessitate multiple unexcused absences during a month.  The only suggestion of such limitation in the progress notes of Dr. Lerner is subjective complaints of severe headaches made by the claimant during the initial evaluation in 1996 [].  Absent substantiating objective evidence, Dr. Lerner's opinion is inconsistent with the evidence of record covering the alleged period of disability and is given no weight in the rendering of this decision.

ECF No. 10 at 21-22.

Bacon contends that the MJ did not properly evaluate whether the ALJ's reason for rejecting the treating physician's opinions were good reasons as required by regulation 20 C.F.R. § 404.1527 and SSR 96-2.  Without addressing the inconsistencies of the treating physician's opinion, Bacon argues that the ALJ's reasons for rejecting the treating physician's opinion were

12

(1:11-cv-01805)

not good reasons because the ALJ made a medical judgment in determining what documentation is needed to support the opinion given by the doctor. She urges, "In fact, the ALJ impermissibly substituted her evaluation of the medical evidence for that of a board certified physician as to what documentation is necessary to support the opinion given by the doctor." ECF No. 23 at 5.

The ALJ did not make a medical judgment. Rather, the ALJ simply evaluated the evidence in accordance with correct legal standards.

After explaining the requirements of 20 C.F.R. § 404.1527 relative to evaluating medical opinions, the magistrate judge made the following determinations:

> Initially, the ALJ determined that although Dr. Lerner was a treating neurologist, his opinions were not supported by detailed clinical or diagnostic test evidence. Accordingly, Dr. Lerner's opinions did not warrant controlling weight. The ALJ then conducted an analysis of his treatment notes pursuant 20 C. F. R. §§ 404. 1527(c)(2), (3), (4), (5) and SSR 96-2p (Docket No. 10, p. 19 of 819).

> First, the ALJ considered the nature, extent and length of Plaintiff's relationship with thespecialist, Dr. Lerner. The ALJ noted that the relationship between Dr. Lerner and Plaintiff existed from 1996 through December 31, 2001, when Plaintiff's insured status expired (Docket No. 10, pp. 20-21 of 819).

> Second, the ALJ reviewed the record and found that minimal weight was given to Dr. Lerner's  opinions because there were few medical signs and laboratory findings to support a finding that Plaintiff suffered severe migraines prior to the date last insured. Thus, there was no supportability for Dr. Lerner's conclusions that the migraines were severe (Docket No. 10, p. 22 of 819).

> Third, the ALJ found that Dr. Lerner referred Plaintiff for a magnetic resonance imaging examination, the results of which showed mild cervical spondylosis and central bulging discs at C4-5 and C5-6. Dr. Lerner did not correlate this evidence to the migraines or the symptoms of migraines. His treatment was predicated solely on Plaintiff's subjective complaints of severe headaches made in the initial evaluation in 1996 (Docket No. 10, p. 22 of 819).

13

(1:11-cv-01805)

> It is clear that the ALJ considered Dr. Lerner a treating source, whose opinions were unworthy of controlling weight for the reasons that they were unsupported by medical evidence and inconsistent with other medical evidence. The ALJ made findings consistent with the relevant case record established prior to the expiration of Plaintiff's insured status. Therefore, the Magistrate recommends that the Court deny Plaintiff's second claim as the ALJ applied the correct legal standards and made findings of fact supported by substantial evidence in the record.

ECF No. 20 at 23-24.  The Court agrees with the magistrate judge's assessment.

In the current case, the ALJ found that the treating physician's opinion was overly influenced by Bacon's subjective complaints of severe headaches made during the initial evaluation in 1996 and inconsistent with the evidence covering the alleged period of disability. ECF 10 at 22.  The ALJ concluded that although the treating physician opined that Bacon was incapable of low stress jobs and would miss work multiple times a month, the progress notes and other medical records prior to the date last insured failed to document any objective evidence that would suggest that Bacon would be unable to tolerate any level of stress or would require multiple unexcused absences during a month.  ECF 10 at 21-22.

The ALJ is not required to credit the viewpoint of the treating physician if that viewpoint merely offers a conclusory opinion that is inconsistent with other diagnoses See *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 384, 287 (6th Cir. 2012) (rejecting the opinions of treating physicians because "they were conclusory and inconsistent with the other evidence").  In fact, "the [ultimate] determination of disability is the prerogative of the [Commissioner], not the treating physical[.]"  *Houston*, 736 F.2d at 367.

14

(1:11-cv-01805)

Here, the ALJ specifically found that the treating physician's opinion lacked objective evidence and was inconsistent with the other medical evidence on record. ECF 10 at 22. The reasons given by the ALJ for giving no weight to the treating physician's opinions were in fact good reasons. In fulfilling the good reason requirement, the court in *Nelson* stated, "[a]n ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462, 470-472.

Pursuant to case law, the ALJ provided good reason, and in circumstances like the one presented before us, the ALJ was not required to credit the opinion of the treating physician.

### 2. Whether the Treating Physician's Opinion Should Be Given Some Weight

Bacon contends that even if the record lacks sufficient medical evidence to afford the treating physician's opinion controlling weight, some deference should be given to that opinion, rather than rejecting it altogether. ECF No. 23 at 5.

Bacon's position, however, fails to acknowledge that Dr. Lerner's opinions were not just unsupported, they were "inconsistent" with other evidence and based upon Bacon's subjective complaints. Even SSR 96-2, on which Bacon relies, states that "the treating source's opinion also must be 'not inconsistent' with other 'substantial evidence' in the individual's case record." SSR 96- 2p, 1996 WL 374188 (1996). The SSR also states that "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record. SSR 96-2p, 1996 WL 374188 (1996). Bacon

15

(1:11-cv-01805)

has not directed the Court to legal authority which insists that Dr. Lerner's unsupported, inconsistent, medical opinions were entitled to any weight.

An ALJ may withhold controlling weight due to inconsistencies. And, when properly motivated to do so, the ALJ may reject the opinion of a treating physician where good reason exists. See *Ellis v. Commissioner of Social Sec.*, 59 Fed.Appx. 114 (6th Cir. 2003) citing *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1998). Ultimately, the ALJ declined to accord the treating physician's opinions any weight because of their inconsistencies with the record and the lack of objective evidence support the opinions.

### C. Bacon's Past Work and Performance

Bacon argues that the ALJ erred in disregarding her past poor work performance and special accommodations provided by her former employer. ECF No. 23 at 6. Bacon contends that the ALJ failed to follow the necessary steps in determining Step Four. Step Four determines whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. 20 CFR 404.1520(f). The relevant statute describes the following,

> We consider how well you do your work when we determine
> whether or not you are doing substantial gainful activity. If you are
> unable, because of your impairments, to do ordinary or simple
> tasks satisfactorily without more supervision or assistance that is
> usually given other people doing similar work, this may show that
> you are not working at the substantial gainful activity level. . . ."

20 C.F.R. § 404.1573(b).

> "The work you are doing may be done under special conditions
> that take into account your impairment . . . If your work is done
> under special conditions, we may find that it does not show that
> you have the ability to do substantial gainful activity. Also, if you
> are forced to stop or reduce your work because of the removal of

(1:11-cv-01805)

> special conditions that were related to your impairment and
> essential to your work, we may find that your work does not show
> that you are able to do substantial gainful activity. Examples of the
> special conditions that may relate to your impairment include, but
> are not limited to, situations in which-
>
> (1) You required and received special assistance from other employees in performing your work;
> (2) You were allowed to work irregular hours or take frequent rest periods;
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work; ...
> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare."

20 CFR § 404.1573(c).

Bacon argues that the magistrate judge erred in finding that the ALJ was correct in properly considering all the facts surrounding the Step Four analysis of the sequential evaluation. ECF No. 23 at 6-7. Specifically, Bacon contends that (1) the ALJ failed to consider how poorly she performed her past relevant work and that said work was performed under special conditions. ECF No. 23 at 6. The ALJ's determination that the special conditions were merely accommodations were flawed. (2) Finally, Bacon asserts that because she worked so poorly, she did not have the ability to work at SGA levels. ECF No. 23 at 8.

### 1. Bacon contends that the ALJ disregarded her poor work performance and accommodations

Contrary to Bacon's contention, the ALJ appropriately considered Bacon's past work performance and accommodations. ECF No. 10 at 22. The ALJ stated, "[a]lthough the claimant described having to turn off the lights, wearing sunglasses, leaving work early, turning the

17

(1:11-cv-01805)

phones over to the service, leaving notes for her boss and going home, and vomiting in trashcans, I find that these were adjustments tolerated by the employer and not specific work accommodations. I do not find these to be special considerations provided by the employer." ECF No. 10 at 22. *See Wills v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 153339 (Nov. 29, 2011) (affirming that the ALJ is entitled to reject the "accommodated work" claim when well supported). The ALJ concluded, "[i]f anything, the claimant demonstrated the ability to sustain work in spite of her headaches up until 1994 when she 'quit' her job" because at the time she quit her job, "the medical evidence of record does not show an increase or worsening of the claimant's symptoms around that time." ECF No. 10 at 23. The ALJ also noted that, according to the progress notes of the treating physician, Bacon's headaches were generally controlled and stable with medication. The ALJ also noted that the headache exacerbations complained of were a result of Bacon failing to take her medications as prescribed either due to lack of finances or compliance. ECF No. 10 at 22.

As the magistrate judge noted, the ALJ did not specifically reference 20 C. F. R. § 404.1573 in her decision. The ALJ, however, relied upon Bacon's testimony that early in her career she was a dispatcher and while so employed her employer made special accommodations including the ability to work in sunglasses, lower the lights, regurgitate when nauseous and miss work when necessary; as well as Dr. Lerner's opinion that Plaintiff was unable to tolerate stress and would have to incur multiple unexcused absences during a month. ECF No. 20 at 25. (citing Docket No. 10, pp. 20, 22 of 819). So it is obvious that the ALJ considered the circumstances under which Bacon performed her prior work. Despite this evidence, Bacon did

18

(1:11-cv-01805)

not claim that she worked irregular hours, was provided special equipment, was able to work only because of specially arranged circumstances, in accordance with special conditions listed in 20 C. F. R. § 404.1573(c).  Based upon the record, the ALJ appropriately concluded that the work done under the conditions provided showed that, prior to the expiration of her insured status, Bacon had the ability to work at the substantial gainful activity level.

### IV. Conclusion

For the foregoing reasons, the Court affirms the Commissioner of Social Security's decision denying Bacon's application for benefits.  The Report and Recommendation is adopted and the objections are overruled.

IT IS SO ORDERED.

 July 31, 2012                              */s/ Benita Y. Pearson*
Date                                        Benita Y. Pearson
                                            United States District Judge